Electronically Filed: 6/5/2026 4:28 PM

**STATE OF MAINE**

AROOSTOOK, ss.                                    **SUPERIOR COURT**
                                                  **CIVIL ACTION**
                                                  **DOCKET NO.:**  CARSC-CIV-2026-00048

| | |
|---|---|
| RYAN B. COTTLE, | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| v. | ) |
| | ) |
| TREVOR MACDOUGAL, in his individual | ) |
| capacity as a Presque Isle police officer, | ) |
| | ) |
| SAMUEL FULLER, in his individual | ) |
| capacity as a Presque Isle police officer, | ) |
| | ) |
| CHRISTOPHER HAYES, in his individual | ) |
| capacity as the Presque Isle police chief, and | ) |
| | ) |
| CITY OF PRESQUE ISLE, MAINE, | ) |
| | ) |
| *Defendants* | ) |

**COMPLAINT**

Plaintiff RYAN COTTLE, by and through counsel, states and alleges as follows:

## JURISDICTION AND VENUE

1. The Superior Court has jurisdiction over civil tort and constitutional claims.

2. Claims against a municipality are properly brought in Superior Court.

3. All Defendants reside and conduct official duties in Aroostook County, Maine.

4. Proper venue is Aroostook County, as all events occurred in the city of Presque Isle, Aroostook County, Maine.

## PARTIES

5. Plaintiff Ryan Cottle ("Plaintiff") is a resident of Houlton, County of Aroostook, State of Maine.

6. The City of Presque Isle (the "City") is and was at all times material hereto a political municipal subdivision of the State of Maine, organized and existing under and by virtue of the laws of Maine.

7. The Presque Isle Police Department ("PIPD") is and was at all relevant times a City of Presque Isle agency, providing the vehicle through which the City fulfills its policing functions.

8. Upon information and belief, Defendant MacDougal ("MacDougal") is and was at all relevant times hereto a citizen of Presque Isle, County of Aroostook, State of Maine.

9. MacDougal was at all relevant times employed by the City, through PIPD, as a duly appointed and sworn police officer, and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

10. Upon information and belief, Defendant Fuller ("Fuller") is and was at all material times hereto a citizen of Presque Isle, Aroostook County, Maine.

11. Fuller was at all relevant times employed by the City, through PIPD, as a duly appointed and sworn police officer, and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

12. Upon information and belief, Defendant Hayes ("Hayes") is and was at all relevant times hereto a citizen of Presque Isle, County of Aroostook, State of Maine.

13. Hayes was at all relevant times employed by the City, through PIPD, as a duly appointed and sworn police chief, and acting in his individual capacity and/or under color of state law, and within the scope of his employment.

## STATEMENT OF FACTS

14. On June 9, 2024, Plaintiff was at Saint Mary's Catholic Church in Presque Isle, Maine.

15. On June 8, 2024, PIPD officers had had contact with Plaintiff, who was in a mental crisis.

16. On June 9, 2024, St. Mary's Catholic Church contacted PIPD requesting assistance in Plaintiff's removal from the church.

17. MacDougal and Fuller responded and encountered Plaintiff.

18. At that time, Plaintiff was experiencing a mental health crisis, delusions, and other symptoms.

19. Church staff relayed to MacDougal and Officer Marie St. Peter that they believed he was suffering from mental health issues and appeared exhausted.

20. Church staff relayed that he initially approached the altar, and when they moved him away from that, he lay down in the aisle and fell asleep. They let him be until they had to close the church. He moved to sit in a centrally located pew.

21. MacDougal confirmed that officers were familiar with Plaintiff, had been "dealing with him for the past 24 hours", and acknowledged he suffered from mental health conditions, including, but not limited to, schizophrenia and drug use.

22. Plaintiff was lethargic and seated in a church pew when MacDougal and Fuller first encountered him.

23. Plaintiff was confused, asking officers "Can I...?  Can I, ummm......?" His shoulders were slumped.

24. Officer Marie St. Peter was present with MacDougal and Fuller. She advised Plaintiff that the church was closing, so he had to leave, but they could talk outside.

25.    Plaintiff told officers "This is why I am staying. This is my house; I'm God. That's me."

26.    Plaintiff was unarmed. He did not attempt to flee. He did not brandish any weapons, nor did he physically or verbally threaten St. Peter, MacDougal, Fuller, or others.

27.    Officer St. Peter attempted to de-escalate the situation and convince Plaintiff to leave the church so church personnel could close it and leave.

28.    Plaintiff stood up and said, "Don't touch me. I've done nothing wrong, have I?"

29.    MacDougal ordered Plaintiff to turn around and put his hands behind his back.

30.    Plaintiff said "no" and MacDougal immediately took a number of steps towards Plaintiff and deployed pepper spray onto Plaintiff's face and into his eyes.

31.    At the same time or immediately after Plaintiff was pepper-sprayed, Fuller deployed his taser, also known as an electronic control device, against Plaintiff. The prongs lodged into Plaintiff's person.

32.    Plaintiff immediately began to scream in pain, cried, and repeatedly said, "Ow! Ow! I'm sorry… I'm sorry… I'm confused".

33.    At the time Plaintiff was pepper-sprayed and tased, he was not threatening, assaulting anyone, resisting arrest, or attempting to flee.

34.    Less than one minute elapsed from the time the officers first approached Plaintiff in the church to the time MacDougal and Fuller deployed pepper spray and the taser.

35.    MacDougal and Fuller gave Plaintiff approximately one second to turn and place his hands behind his back before they deployed pepper spray and the taser against him.

36.    MacDougal then moved to Plaintiff on the floor between the pews and handcuffed him.

37.    MacDougal removed the taser prongs from Plaintiff's back and shoulder without the use

of proper tools, causing further excessive and unnecessary injury and pain to Plaintiff.

38. Nobody, including MacDougal or Fuller, warned Plaintiff that pepper spray and/or a taser might be used if he did not leave the church.

39. Plaintiff did not pose an immediate threat to MacDougal, Fuller, or others.

40. Rather than using de-escalation techniques for a person in a mental health crisis, MacDougal and Fuller immediately and forcefully deployed chemical agents and electronic weapons against Plaintiff.

41. Plaintiff was transported to a local hospital for treatment and a mental health evaluation.

42. While Plaintiff was still in crisis at the hospital, lying on the floor facing away from the door, a PIPD officer summoned him for refusing to submit to arrest or detention.

43. It was clear to the PIPD officer that Plaintiff could not sign the summons, so he left it on the counter in the room.

44. The Presque Isle District Attorney's Office declined to prosecute Plaintiff for the summonsed offense of refusing to submit to arrest or detention.

45. The use of pepper spray and the taser against Plaintiff was excessive and unreasonable under the circumstances.

46. As a direct and proximate result of the pepper spray, Plaintiff suffered injuries.

47. As a direct and proximate result of the tasing, Plaintiff suffered injuries.

48. As a direct and proximate result of the improper removal of the taser prongs, Plaintiff suffered injuries.

49. Plaintiff's injuries include, but are not limited to, physical injuries and emotional distress.

50. Plaintiff received medical care as a result of the pepper spray and tasing. Plaintiff has

incurred damages as a result of the incident.

51.    At all material times hereto, the City/PIPD had use of force policies and was responsible to train or ensure training of its officers regarding use of force, including MacDougal and Fuller.

52.    The City/PIPD use of force policy in effect on June 9, 2024, prohibited excessive force.

53.    Hayes was responsible for supervising all PIPD officers and ensuring that they were fully and properly trained on the appropriate use of force - and particularly to avoid any use of excessive force.

54.    MacDougal's and/or Fuller's use of force against Plaintiff was excessive, unreasonable, and inappropriate.

55.    MacDougal's and/or Fuller's use of force against Plaintiff violated the City's/PIPD's use of force policy.

56.    Upon information and belief, Hayes, PIPD, and the City had notice of prior incidents of excessive force by MacDougal and/or Fuller against others and failed to terminate, discipline, or otherwise address these patterns of misconduct.

57.    Plaintiff provided notice of this claim to Defendants in substantial compliance with 14 M.R.S. § 8107.

## CLAIMS FOR RELIEF

### Count I - Negligence
### (against Defendants MacDougal and Fuller, Jointly and Severally)

58.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 57 as if fully set forth herein.

59. MacDougal and Fuller each owed a duty of care to Plaintiff.

60. MacDougal and Fuller each owed a duty to use only such force as was reasonable, necessary, and appropriate under the circumstances when interacting with Plaintiff.

61. MacDougal and Fuller violated specific departmental policies regarding use of force, training provided to officers, and/or applicable legal standards governing police conduct.

62. MacDougal and/or Fuller breached their duty of care to Plaintiff.

63. The use of pepper spray and/or the deployment of the taser against Plaintiff under the circumstances was unreasonable and constituted a breach of the duty of care owed to Plaintiff.

64. MacDougal's removal of the taser prongs without utilization of appropriate procedures caused further injuries to Plaintiff.

65. MacDougal and/or Fuller's breaches of duty caused injury to Plaintiff.

66. The unreasonable use of pepper spray and/or the taser directly and proximately caused the injuries sustained by Plaintiff.

67. Plaintiff suffered damages as a result of MacDougal and/or Fuller's breach of duty, and each of them.

68. Plaintiff has incurred and will continue to incur medical expenses, pain and suffering, and other damages as a direct result of the injuries caused by the pepper spray, taser, and improper removal of the taser prongs.

## Count II - Negligence
### (against Defendant Hayes)

69. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 68 as if

fully set forth herein.

70. Hayes owed a duty of care to Plaintiff.

71. Hayes owed Plaintiff, citizens, and others, a duty to ensure proper officer training and reprimand or discipline for any officers violating the City/PIPD policies, including but not limited to, termination.

72. Hayes was aware, or should have been aware, of prior use of force policy violations by MacDougal and/or Fuller.

73. On or prior to June 9, 2024, Hayes, with deliberate indifference to the rights of arrestees, detainees, and others, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that failed to provide for the safety of arrestees, detainees, and others during arrest, including but not limited to the use of force, and others that shall be further identified in discovery.

74. Hayes had the power to terminate or appropriately discipline MacDougal and/or Fuller for their misconduct prior to June 9, 2024, but failed to do so despite his knowledge of a pattern of complaints regarding excessive force.

75. By failing or refusing to terminate or appropriately discipline MacDougal or Fuller, Hayes caused them to act with impunity and without fear of retribution.

76. Hayes' failure to terminate or properly discipline MacDougal and/or Fuller is part of his larger custom, policy, or practice of failing to supervise, terminate, or properly discipline his officers for unconstitutional, unlawful, or otherwise improper conduct, and thereby encouraged MacDougal and/or Fuller to continue engaging in unlawful acts towards arrestees and others, including Plaintiff.

77. Hayes breached this duty of care to Plaintiff by failing to properly train MacDougal and/or Fuller, reprimand or discipline MacDougal and/or Fuller, and/or terminate MacDougal and/or Fuller.

78. Hayes' breach of duty caused injury to Plaintiff.

79. Hayes' breach of duty directly and proximately caused the injuries sustained by Plaintiff.

80. Plaintiff suffered damages as a result of Hayes' breach of duty.

81. Plaintiff has incurred and will continue to incur medical expenses, pain and suffering, and other damages as a direct result of the injuries he sustained.

## Count III - Negligence
## (against Defendant City of Presque Isle)

82. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 81 as if fully set forth herein.

83. The City/PIPD owed a duty of care to Plaintiff.

84. The City/PIPD owed a duty to ensure proper officer training and reprimand or discipline for officers or employees violating PIPD policies, including but not limited to, termination.

85. Upon information and belief, the City/PIPD had received complaints from citizens and others concerning excessive force, abuse of authority, and other issues, for MacDougal, Fuller, and other officers.

86. The City/PIPD was aware, or should have been aware, of prior use of force and/or other policy violations by MacDougal and/or Fuller.

87. The City/PIPD failed to properly train or modify its training of MacDougal and/or Fuller

and other officers, including but not limited to, matters related to the reasonable and appropriate use of force during such encounters with mentally ill persons, or arrests.

88. Effectuating an arrest, using force to effectuate an arrest, and intervening in the use of force is a usual and recurring situation encountered by PIPD officers on a regular basis.

89. As such, the City/PIPD was aware of the need for more and/or different training. The City/PIPD knew its officers needed specific or different training on the appropriate and necessary use of force when dealing with those in a mental health crisis, and with arrestees and/or detainees.

90. With deliberate indifference to the rights of citizens and others, the City/PIPD failed to provide adequate training to its officers on the use of force.

91. The City/PIPD was aware that deprivation of the constitutional rights of citizens and others was likely to result from its inadequate or lack of training and the failure of the City/PIPD to modify its training.

92. As such, the City/PIPD was deliberately indifferent and exhibited reckless disregard with respect to the real potential violation of constitutional rights of its citizens and others.

93. The City's/PIPD's failure to adequately train and/or to modify training constituted official policies, practices, and/or customs.

94. The City's/PIPD's failure to adequately train and/or to modify training was behind the acts and omissions MacDougal and Fuller made towards Plaintiff.

95. The City/PIPD breached its duty of care to Plaintiff by failing to properly train or modify its training of MacDougal and/or Fuller, including but not limited to, matters related to the reasonable and appropriate use of force during arrests, detentions, permissible or

prohibited removal of taser prongs by officers, and/or in the de-escalation of incidents involving individuals in a mental health or other crisis.

96. The City's/PIPD's breach of duty caused injury to Plaintiff.

97. The City's/PIPD's breach of duty directly and proximately caused the injuries sustained by Plaintiff.

98. Plaintiff suffered damages as a result of the City's/PIPD's breach of duty.

99. Plaintiff has incurred and will continue to incur medical expenses, pain and suffering, and other damages as a direct result of the injuries he sustained.

**Count IV - Assault and Battery**
**(against Defendants MacDougal and Fuller, Jointly and Severally)**

100. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 99 as if fully set forth herein.

101. MacDougal and/or Fuller committed acts against Plaintiff.

102. MacDougal intentionally deployed pepper spray against Plaintiff, causing harmful and offensive contact with Plaintiff's person.

103. Fuller intentionally deployed a taser against Plaintiff, causing harmful and offensive contact with Plaintiff's person.

104. Without proper training, procedure, or authority, MacDougal removed the taser prongs from Plaintiff, causing unnecessary additional injury and pain.

105. MacDougal and/or Fuller acted with intent to cause harmful or offensive contact, or acted with reckless disregard for the harm that would result.

106. MacDougal and/or Fuller caused harmful or offensive contact with Plaintiff's person.

107. The deployment of the pepper spray caused Plaintiff pain, injury, and trauma.

108. The deployment of the taser caused electrical current to pass through Plaintiff's body, causing pain, injury, and trauma.

109. The improper removal of the taser prongs from Plaintiff while he lay on the floor, handcuffed, caused him additional pain, trauma, and injury.

110. Plaintiff suffered damages as a result.

111. MacDougal's and/or Fuller's actions against Plaintiff were committed with actual or implied malice.

112. Plaintiff has incurred and will continue to incur medical expenses, pain and suffering, emotional distress, and other damages as a direct result of the assault and battery.

## Count V - Excessive Force in Violation of 5 M.R.S. § 4682
### (against all Defendants)

113. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 112 as if fully set forth herein.

114. Plaintiff is entitled to the protections of the United States Constitution, the laws of the United States, the rights secured by the Constitution of the State of Maine, and the laws of the State of Maine.

115. The City is a governmental entity organized under Maine law, and its chief of police and officers are governmental employees.

116. Hayes, who failed to properly train, supervise, reprimand, or terminate officers acting in violation of Maine law, and MacDougal and Fuller, who deployed pepper spray and the taser, were employees of the City/PIPD acting under color of law.

117.   The City/PIPD violated Plaintiff's constitutional rights.

118.   The use of excessive force by MacDougal and Fuller, by Hayes in failing and refusing to adequately train, supervise, reprimand, or terminate MacDougal and Fuller and the City/PIPD in failing to adequately train, supervise, investigate, reprimand, or terminate MacDougal, Fuller, or Hayes for their actions against Plaintiff, and in permitting such conduct to continue without consequence, violated Plaintiff's rights under the Maine Constitution and the United States Constitution to be free from physical force and violence, unreasonable seizure, and excessive force.

119.   Defendants' actions and failure to act engaged in conduct that would cause a reasonable person to suffer emotional distress and/or to fear death or bodily injury to that person, in direct violation of 5 M.R.S. §4682.

120.   The violation was committed under color of law.

121.   MacDougal was acting in his official capacity as a police officer employed by Defendant the City/PIPD when he deployed the pepper spray against Plaintiff and improperly removed the taser prongs from Plaintiff's person.

122.   Fuller was acting in his official capacity as a police officer employed by the City/PIPD when he deployed the taser against Plaintiff.

123.   Hayes was acting in his official capacity as police chief of the City/PIPD when he failed to adequately supervise, train, reprimand, and/or discipline MacDougal and/or Fuller for prior violations of PIPD policies, including prohibiting use of excessive force.

124.   At all times relevant hereto, MacDougal and/or Fuller were on duty, wearing uniforms and/or otherwise identified as police, engaged in law enforcement activities, and acting

pursuant to their authority as police officers and the chief of police for the City/PIPD.

125. At all times relevant hereto when advised of improper use of force by MacDougal and/or Fuller, Hayes, and the City/PIPD were acting in their official capacities in failing to address, correct, or otherwise train, supervise, discipline, reprimand, or terminate the officers.

126. Plaintiff suffered damages as a result of Defendants' joint and several constitutional violations.

127. Plaintiff has incurred and will continue to incur medical expenses, pain and suffering, emotional distress, and other damages as a direct result of the excessive force and violation of constitutional rights.

**Count VI - Vicarious Liability**
**(against Defendant City of Presque Isle/PIPD)**

128. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 127 as if fully set forth herein.

129. Employees of the City/PIPD committed torts against Plaintiff.

130. Plaintiff has satisfied all required pre-suit notice and timing requirements, or such requirements are excused or otherwise satisfied.

131. MacDougal and/or Fuller, employed by the City/PIPD, committed negligence, assault and battery, and/or used excessive force against Plaintiff in violation of Plaintiff's constitutional rights.

132. Hayes, employed by the City/PIPD, committed negligence against Plaintiff.

133. MacDougal, Fuller, and Hayes were acting within the scope of their employment.

134. MacDougal, when he sprayed pepper spray in Plaintiff's face, was acting within the scope of his employment as a police officer for the City/PIPD at the time of the incident.

135. Fuller, who deployed the taser against Plaintiff, was acting within the scope of his employment as a police officer for the City/PIPD at the time of the incident.

136. At all times relevant hereto, MacDougal, Fuller, and Hayes were on duty, engaged in law enforcement activities, acting pursuant to their authority and responsibilities as police officers and chief of police, and the incident occurred during the course of the officers' employment with the City/PIPD.

137. The City/PIPD is liable for torts committed by its employees.

138. The City/PIPD is responsible for the training, supervision, and conduct of its officers, for developing and enforcing adherence to its policies and procedures governing use of force by its officers.

139. The City/PIPD is vicariously liable for the tortious and/or negligent conduct of its officers and employees committed within the scope of their employment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in favor of Plaintiff and against Defendants, jointly and severally, as follows:

140. Compensatory damages against Defendants, and each of them, for all medical expenses incurred by Plaintiff as a result of the incident, including emergency treatment, hospitalization, medication, physical therapy, psychological counseling, and ongoing medical care.

141. Compensatory damages against Defendants, and each of them, for pain and suffering experienced by Plaintiff as a result of the physical injuries sustained in the incident.

142. Compensatory damages against Defendants, and each of them, for emotional distress, anxiety, fear, trauma, and psychological harm suffered by Plaintiff as a result of the incident.

143. Compensatory damages against Defendants, and each of them, for permanent injuries, scarring, disfigurement, or disability suffered by Plaintiff as a result of the incident.

144. Compensatory damages against Defendants, and each of them, for ongoing and future emotional distress, anxiety, fear, trauma, and psychological harm to continue being suffered by Plaintiff as a result of the incident.

145. Punitive damages against Defendants, and each of them, as allowed by law, given the offensive, malicious, and egregious nature of MacDougal and Fuller's conduct against Plaintiff.

146. Pre-judgment interest as allowed by law.

147. Post-judgment interest as allowed by law.

148. Costs of this action.

149. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED at Presque Isle, Maine this 5th day of June, 2026.

A TRUE COPY

Attest: _____

Ass'/.Clerk of Courts

Adam P. Swanson, Esq.
Maine Bar No.: 005118
Attorney for Plaintiff
SWANSON LAW, P.A.
487 Main Street, Suite 1
Presque Isle, ME 04769
(207) 768-5800
*aswanson@swansonlawpa.com*